## TRAFFIC MOTOR TRUCK CORPORATION, v. CLAYWELL et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1926.)

No. 7035.

1. **Trial ⬤141, 143—It is court's duty to direct verdict when evidence is undisputed or conflicting evidence is so conclusive that contrary verdict should be set aside.**

It is the duty of the trial court to direct a verdict at the close of the evidence where (1) the evidence is undisputed, and (2) where the evidence is conflicting but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, ought to or would set aside a verdict in opposition to it.

2. **Master and servant ⬤150(1)—Master is not required to warn of danger within knowledge of servant, or which master has no reason to anticipate.**

An employer owes no duty to warn a servant of a danger which it has no reason to expect that servant would place himself in a position to incur, nor of a danger which the servant already has sufficient knowledge of to enable him to protect himself against.

3. **Master and servant ⬤152—Master held not under duty to warn experienced mechanic of danger of driving steel pin without using buffer.**

Plaintiff, 17 years old who had worked for two years as a mechanic, in driving a steel wrist pin into a hole struck it a hard blow with a steel hammer, and it chipped, a piece flying into and blinding one of his eyes. It was customary to, and he had seen his fellow workers, use a block of wood as a buffer. *Held,* that defendant was under no duty to warn plaintiff of the danger of driving the pin without a buffer.

4. **Master and servant ⬤150(1)—Duty only to warn servant with respect to machinery or appliances inherently dangerous.**

It is only machinery or appliances which are recognized as in their nature dangerous to an employé using them or working in proximity to them as to which the employer owes the duty of looking out for his safety or warning him of his danger.

5. **Master and servant ⬤107(1)—Master held not negligent in failing to provide tools for safe work.**

A mechanic, as required, furnished all the tools for his work except a reamer and the block for a buffer. His employer furnished the reamer, and there was no evidence that plaintiff could not have found a block by searching. *Held,* that employer was not chargeable with negligence for failing to provide tools necessary to the safety of the work.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action at law by George Claywell, by his next friend Josephine Claywell against the Traffic Motor Truck Corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Frank H. Sullivan, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, Eugene H. Angert, and William O. Reeder, all of St. Louis, Mo., on the brief), for plaintiff in error.

Harry S. Rooks, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and YOUMANS, District Judge.

SANBORN, Circuit Judge. In October, 1922, the plaintiff below, a minor 17 years of age, a mechanic and an employee of the Traffic Motor Truck Corporation, while engaged in fitting and putting a wrist pin into a hole in a piston of an automobile, struck the pin, which was a round piece of highly tempered steel about two inches long and an inch in diameter, with his steel hammer, which he owned and had himself furnished, a hard blow, the wrist pin chipped, and a piece of it struck one of his eyes and put it out. He brought this action for the alleged negligence of the motor company, and recovered a verdict and judgment of $5,000. The charges of negligence on which the recovery rests were, first, that the motor company did not warn him of the danger that a tempered steel pin would chip if he struck it a hard blow with a steel hammer; second, that it failed to provide him with a babbitt metal hammer, or a copper hammer, or a lead hammer, or a block of wood, to be used in driving the wrist pin. The main error assigned by the defendant is that the court refused to instruct the jury to return a verdict in its favor.

[1] It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the

evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, ought to or would set aside a verdict in opposition to it. Small Co. v. Lamborn & Co., 45 S. Ct. 300, 267 U. S. 248, 254, 69 L. Ed. 597; Fricke v. International Harvester Co., 247 F. 869, 871, 160 C. C. A. 91; Atchison, T. & S. F. Ry. Co. v. Wyer (C. C. A.) 8 F.(2d) 30, 32.

[2] An employer owes no duty to warn a servant of a danger which it has no reason to expect that the servant would place himself in a position to incur, nor of a danger which the servant already has sufficient knowledge of to enable him to protect himself against it. Atchison, T. & S. F. Ry. Co. v. Wyer (C. C. A.) 8 F.(2d) 30, 32, and cases there cited.

[3] The record in this case discloses these facts. When the plaintiff was employed by the defendant, he told its agents who employed him that he had been engaged as a mechanic two years, and one of these agents knew that he had worked for the Pierce Automobile Company. The plaintiff testified that, just prior to his employment by the defendant, he had worked about four months for the Arrow Automobile Company as a mechanic repairing trucks around the running gear of automobiles, that previous to his service with the Arrow Company he had worked on automobiles as a mechanic for one and a half years for the Pierce-Arrow Automobile Company, and that prior to that service he had worked for the W. B. Knight Machinery Company in their machine shops learning his trade. When he was injured, he had been working as a mechanic for the defendant on the running gear of motor trucks about two weeks, and had been engaged in the work in which he was injured of assembling the motors about two weeks. He had assembled, with the aid of his fellow servants, one motor, was assembling another, and had fitted and put one wrist pin into the hole in the piston provided for it, and was driving in the second wrist pin when he struck it the hard blow with his steel hammer which caused it to chip and injure him. A tempered steel pin is a common article, whose attributes are generally well known to a mechanic who has been working at his trade about automobiles two or three years; a steel hammer is an ordinary tool, and the placing of the former in a hole provided for it in a piston in an automobile is a simple operation. A mechanic who had learned his trade as such in machine shops more than two years before he was employed by the defendant, and had during those two years worked as a mechanic on automobile trucks, must be presumed to know that a hard blow with a steel hammer on such a wrist pin as that which the plaintiff was driving, without placing a piece of wood or a similar buffer between them, is liable to cause the hammer or the pin to chip. And in our opinion there was no substantial evidence in this case that at any time before the plaintiff was injured there was anything to suggest to the defendant or to its foreman that it was necessary to warn the plaintiff that a hard blow with a steel hammer, without placing a buffer between them, would be liable to cause the hammer or the pin to chip, and there was no substantial evidence that the defendant knew or had any reason to anticipate that the plaintiff, with two years' experience as a mechanic working upon automobiles, would place himself in danger of the injury he suffered from the blow he struck.

[4] It is only machinery or appliances which are recognized as in their nature dangerous to an employee using them or working in proximity to them as to which the employer owes the duty of looking out for his safety or warning him of his danger (Lynn v. Glucose Co., 128 Iowa, 501, 504, 104 N. W. 577); and a steel hammer and a tempered steel pin are not in this class.

[5] The second question is, Was there such substantial evidence that the defendant failed in a duty it owed to the plaintiff to furnish him with a soft hammer or a block of wood for a buffer, that the court ought to have left to the jury the issue of its actionable negligence on that account? The evidence was conclusive, and the fact indisputable, that the rules of the defendant required the plaintiff and his fellow servants to furnish and that they did furnish all the tools necessary to do their work with reasonable safety, except an adjustable reamer and a block of wood for a buffer between the hammer and the wrist pin, and that the defendant furnished the reamer to ream out the holes for the wrist pins in the piston so that the pins could be fitted tightly therein. The evidence was conclusive that, when the plaintiff went to work assembling motors and during the two weeks he worked at that kind of labor, Mr. Alford and Mr. Balducci were his fellow servants; that they had been assembling motors for some time before the plaintiff came to that work; that they showed him how to assemble and assisted him in assembling his first motor; that it took about a week to assemble a motor; and that he was working on his second motor when he was injured. The plaintiff, on his direct ex-

amination, testified that he went to the stockroom, obtained the reamer, reamed out the holes in the piston of his second motor, and drove in one pin before he was injured; that before he put in that wrist pin Mr. Alford told him to go over in the corner and get a block; that he "went over there and the block wasn't there," came back and told Mr. Alford, and the latter said that was all right, to go ahead and drive the pin in; that he had never driven in any wrist pins before, and knew nothing of their characteristics or propensities; that he drove the first wrist pin in successfully and drove the second in about half way; that it was harder to drive in than the first one had been, and Mr. Alford said: "You want to hit it hard. You can't get it in like that. You have to hit it harder." Asked by his counsel if he had any other kind of a tool or a block or anything else to use, and if there was any such furnished him, he answered, "Most of the time we always had a block there, but it didn't happen to be there at the time."

On the cross-examination of the plaintiff, he testified as follows:

"Q. And you say that the way they (Alford and Balducci, his fellow servants) had done that before, they put the wrist pin in the hole, then they took a little piece of wood and held the wood on top of the wrist pin and tapped the wrist pin? A. Yes, sir.

"Q. And drove it in there? A. Yes, sir.

"Q. In other words, any block of wood would do, would it not? A. They always had a block on the corner; yes, sir.

"Q. Any piece of wood would do, that is correct? A. Yes, sir.

"Q. The mere purpose of the wood was to act as a buffer between the hammer and the wrist pin? A. Yes, sir. * * *

"Q. You had driven those in with a piece of wood before, had you not? A. No, sir.

"Q. You had seen it done by these other men? A. Yes, sir.

"Q. And no particular wood was used; any piece of wood that they might have? A. Just a small block of wood.

"Q. In each one of those motors several little blocks of wood come up with the motor? A. At times. They didn't always; sometimes. * * *

"Q. All that you had to do was to get a small piece of wood, no particular size and no particular kind; that is correct? A. Yes, sir."

Counsel for the plaintiff admitted at the trial that the stenographer who took the testimony at the hearing on the motion to remand would testify, and that the admission should have the same effect as if she had testified, that the plaintiff at that time testified as follows:

"Q. Did you tell Mr. Alford at the time immediately prior to the time that your eye was hurt, that you thought that hitting that with the steel hammer, as he had told you to do, would chip off the wrist pin? A. Yes, sir.

"Q. What did he say at that time? A. He said, 'No,' that wouldn't chip off."

The plaintiff testified at the trial at one time that he did not testify at the hearing on the motion to remand that he told Alford that hitting that with the steel hammer as he had told him to do would chip off the wrist pin, at another time that he was not positive but thought that he did tell him so, and at another time that he did not remember giving such testimony. There was no other evidence than that which has been recited worthy of consideration on the issue of failure to furnish tools requisite to enable the plaintiff to do the work required of him with safety. The result is that the plaintiff furnished all the tools required but the reamer and the small block of wood for a buffer. The defendant furnished the reamer. If it was for the defendant to furnish the small block of wood, the burden of proof to establish the fact that it failed so to do was upon the plaintiff, the legal presumption was that it had discharged this duty, the greater weight of the evidence was that it had done so, and the evidence to that effect was so conclusive in our opinion that the verdict below contrary to that evidence and to the legal presumption cannot be sustained.

There is another reason for this conclusion, and that is that the evidence in this case to which reference has been made leaves no reasonable doubt that the plaintiff was aware of the danger of striking the wrist pin with a steel hammer and of the manner in which a block of wood had been previously used as a buffer to prevent the chipping of the pin, so that he was guilty of contributory negligence in striking the pin without using the buffer.

The judgment below must therefore be reversed, and the case remanded to the court below, with directions to grant a new trial, and it is so ordered.