936 F.2d 567
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carmelo ALIBERTI, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, Defendant-Appellee.
 No. 90-2439.
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1991.
Decided July 2, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-89-2645-PN)
 Paul K. Hemmer, Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., Columbus, Ohio (Argued), for appellant; C. Richard Grieser, Grieser, Schafer, Blumenstiel & Slane Co., L.P.A., Columbus, Ohio, William P. Baker, Baker & Baker, Baltimore, Md., on brief.
 David Bart Goldstein, Semmes, Bowen & Semmes, Baltimore, Md. (Argued), for appellee; Mark J. Daneker, Semmes, Bowen & Semmes, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and JOHN C. GODBOLD, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Carmelo Aliberti, had worked as a railroad trackman since 1953. He had immigrated from Italy as an adult with very little education or English language skills, and eventually made railroading his career, hoping to work at least until normal retirement age. His railroad career came to an early end, however, on November 17, 1987.
 
 
 2
 On that date, Aliberti was part of a four-man track repair crew and a passenger in a company van in transit from Perryville to Edgewood Yard in Maryland. When the van arrived at Edgewood, the driver parked the van on sloping ground which left the van off balance, resting on uneven ballast next to a pile of discarded railroad ties.
 
 
 3
 Two of Aliberti's younger co-workers were able to get out of the van without injury. But when Aliberti attempted safely to step from the van to the ground he fell, seriously injuring his left side and low back when he landed on the uneven ground and discarded ties. The injuries have prevented him from returning to railroad employment.
 
 
 4
 Aliberti filed suit in the United States District Court for the District of Maryland, stating a negligence claim arising under the Federal Employers' Liability Act, 45 U.S.C. Secs. 51 et seq.
 
 
 5
 In his complaint, Aliberti alleged that Amtrak had failed to provide a reasonably safe place to work, failed to provide a safe and suitable means or method of performing the work, failed to warn him of hazards which Amtrak knew existed in its work place, and failed to inspect and maintain the work place in a reasonably safe condition or to take any steps to alleviate the unsafe condition of the work place. Amtrak's answer generally denied Aliberti's allegations of railroad negligence and raised the defense of contributory negligence.
 
 
 6
 Counsel for Amtrak took the deposition of Aliberti on March 28, 1990 and subsequently filed a motion for summary judgment, alleging that Aliberti had failed to offer any proof that Amtrak had been negligent or that Amtrak's negligence proximately caused him to sustain an injury. Aliberti's reply set forth his theory of negligence and causation under the FELA. The motion and reply were filed without affidavits and were based solely upon the record and the transcript of Aliberti's deposition. The district court issued a memorandum and order dated July 24, 1990 granting Amtrak's motion for summary judgment, and judgment was entered in favor of Amtrak on July 26, 1990.
 
 
 7
 Aliberti filed a timely Notice of Appeal on August 7, 1990.
 
 
 8
 Aliberti's first assertion of error is that, in granting summary judgment in Amtrak's favor, the district court applied a negligence standard more stringent than that set out in FELA.
 
 
 9
 The Act is set forth in 45 U.S.C. Secs. 51 et seq. Section 51 of the Act provides, in pertinent part,
 
 
 10
 Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 
 
 11
 Aliberti has called our attention to two cases which he maintains set out the quantum of proof necessary to make out the negligence described in section 51. The first is Lavender v. Kurn, 327 U.S. 645 (1946). There, in weighing a substantial amount of evidence supporting alternative explanations for the injury and death of a railroad worker alongside a track bed, the Court wrote,
 
 
 12
 Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.
 
 
 13
 Id. at 653.
 
 
 14
 The second case cited is Rogers v. Missouri-Pacific R.R. Co., 352 U.S. 500 (1957), in which the Court ruled that
 
 
 15
 [u]nder [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.
 
 
 16
 Id. at 506-07 (footnotes omitted). We recite the language from Lavender and Rogers to the extent we do to convey the rather liberal standard under which, absent narrowing authority, a negligence question raised under FELA may go to a jury.
 
 
 17
 Amtrak has cited two other Supreme Court cases and authorities from several federal courts of appeal in the hope of convincing us that the negligence standard is not as liberal as Aliberti would have us believe. We are duly persuaded. For missing from Aliberti's casting of the law is the element of foreseeability.
 
 
 18
 In Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117 (1963), the Supreme Court ruled that "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence." See also Inman v. Baltimore & Ohio R.R. Co., 361 U.S. 138, 140 (1959) (lack of evidence of previous, similar occurrences negated element of foreseeability of harm).
 
 
 19
 In addition, as to the character of the evidence the FELA plaintiff must produce, the bare occurrence of an injury alone cannot provide evidence of negligence and proximate causation necessary to allow the case to go to the jury. Kuberski v. New York Cent. R.R. Co., 359 F.2d 90, 93 (2d Cir.1966), cert. denied, 386 U.S. 1036 (1967). Nor are the employee's own conclusory assertions of negligence, absent proof of specific facts, sufficient to support a rational inference of negligence. Hurley v. Patapsco & Back Rivers R.R. Co., 888 F.2d 327, 329 (4th Cir.1989).
 
 
 20
 Aliberti has apparently relied upon the "measure of speculation and conjecture" language in Lavender for the argument that evidence of negligence may be created by speculation or conjecture. But courts construing Lavender have been careful to emphasize that the evidence of employer negligence offered by the FELA plaintiff must rise above mere speculation and conjecture; in short, only reasonable inferences of negligence and causation may be drawn from probative facts which the plaintiff has the burden of presenting. Hurley, 888 F.2d at 329; Kuberski, 359 F.2d at 92; Dessi v. Pennsylvania R.R. Co., 251 F.2d 149, 150 (3d Cir.), cert. denied, 356 U.S. 967 (1958); Milom v. New York Cent. R.R. Co., 248 F.2d 52, 55 (7th Cir.1957), cert. denied, 355 U.S. 953, reh'g denied, 356 U.S. 934 (1958). Such was the standard upon which the district court relied, and it was not error to do so. The only remaining question, then, is whether Aliberti presented evidence in response to Amtrak's motion for summary judgment sufficient to meet the requisite standard.
 
 
 21
 Turning then, to the sufficiency of the evidence, here the question is whether, when viewed in a light most favorable to Aliberti, the evidence before the district court on Amtrak's motion for summary judgment was sufficient to prevent the court from concluding that Amtrak was entitled to judgment as a matter of law because the evidence of negligence rose above the level of mere speculation or conjecture, to the point where the hazardous nature of where the van was parked was reasonably foreseeable.
 
 
 22
 We are met at the outset with the fact that the appellant is an Italian immigrant whose command of the English language is far from flawless. Aliberti thus has asked that such lack of language facility be taken into account when reviewing his deposition, the only evidence before the district court on Amtrak's summary judgment motion, and that it be considered in light of the distaste for summary judgment on the issue of negligence.
 
 
 23
 Amtrak, on the other hand, has insisted that Aliberti's step-by-step description of his exit from the van fails to provide any basis to infer, with reason, that its negligence proximately caused Aliberti's fall and resulting injury. Language facility was not involved. The railroad was of the opinion that, at best, the evidence shows that Aliberti suggested at deposition in a speculative way that the way in which the van leaned slightly may have caused him to fall. The district court agreed that that was not enough to show negligence.
 
 
 24
 While Amtrak places great emphasis on Aliberti's concession that the van's running board was free of defect or a slippery substance such as oil, it fails adequately to explain away an inference to be drawn from the deposition, to the effect that because the van was parked unevenly, the bottom of the door from which Aliberti exited was eight to ten inches higher than normal. Aliberti backed out of the van and thus could not see the ground in front of him. With his left hand on the arm rest of the van's middle seat and his right hand on the seatbelt of the right front passenger seat, Aliberti dropped his left foot off the running board to lower himself to the ground. The testimony, difficult to understand and clearly indicating that Aliberti and counsel for Amtrak were having difficulty understanding one another, seems to suggest that Aliberti simply let go when he assumed that his left foot was close to the ground, and then lost his balance and fell because his left foot actually had another eight to ten inches to go.
 
 
 25
 The question of foreseeability, nevertheless, finds no factual support. There is nothing in the record to suggest that the driver of the van was under any kind of duty to park his vehicle in a more level spot or that such a spot existed. Counsel for Aliberti conceded as much at oral argument. Thus, although we have held that FELA is to be liberally construed to effectuate its purpose of benefitting and protecting railroad employees, Sowards v. Chesapeake & Oh. Ry. Co., 580 F.2d 713, 714 (4th Cir.1978), foreseeability remains unproven. Hence, the judgment of the district court, under the instant facts, must be
 
 
 26
 AFFIRMED.